UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIELLE PATTERSON,

       Plaintiff,                                  Case No. 20-13204
                                                    Hon. Mark A. Goldsmith

vs.

PINNACLE AEROSPACE, INC.
DBA SONORA SOFTWARE,

       Defendant.
_____/

## OPINION & ORDER
## DENYING DEFENDANT'S MOTION TO DISMISS (Dkt. 3)

       This diversity action arises out of Defendant Pinnacle Aerospace, Inc.'s alleged revocation of Plaintiff Danielle Patterson's offer of employment after finding out that Patterson was pregnant. Patterson alleges that the revocation was a discriminatory and retaliatory action in violation of the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"). This matter is presently before the Court on Pinnacle's motion to dismiss (Dkt. 3) pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion is denied.

### I. BACKGROUND

       The complaint sets forth the following factual allegations, which the Court presumes to be true for purposes of this opinion. In early August 2020, Patterson interviewed for a position as a Sales Partner at Pinnacle. Compl. at ¶ 6 (Dkt. 1). On August 9, 2020, Pinnacle offered Patterson the position. Id. ¶ 7. On August 14, 2020, Patterson accepted the offer. Id. ¶ 8. On August 19, 2020, Patterson notified Pinnacle's Director of Technical Sales of her pregnancy. Id. ¶ 10. On August 24, 2020, the director called Patterson to inform her that Pinnacle's chief executive officer

1

("CEO") had concerns about hiring Patterson due to her pregnancy and was rescinding the offer of employment. Id. ¶ 12. On August 25, 2020, Pinnacle's CEO emailed Patterson to reiterate these concerns. Id. ¶ 14. On August 27, 2020, Patterson's attorney sent a letter to Pinnacle explaining that Patterson felt she had been discriminated against based on her pregnancy and/or gender. Id. ¶ 15. On August 31, 2020, Pinnacle's CEO sent a letter to Patterson "making it clear" that her offer of employment had been rescinded. Id. ¶ 16. Patterson subsequently initiated the instant lawsuit, bringing sex discrimination and retaliation under the ELCRA.

In accepting the position of Sales Partner, Patterson signed a Sales Partner Agreement on August 14, 2020. See Agreement, Ex. 1 to Def. Mot. to Dismiss (Dkt. 3-1). Pinnacle argues that both of Patterson's claims should be dismissed because the agreement signed by Patterson labels her as a prospective "independent contractor"—not an employee—and, therefore, the ELCRA does not provide coverage to Patterson. Def. Mot. to Dismiss ("MTD") at 5-9 (Dkt. 3). Pinnacle argues in the alternative that Patterson's retaliation claim should be dismissed because Patterson alleged that the protected activity occurred after the supposed retaliation, thereby undermining the necessary element of causation. Id. at 9-11. The Court addresses each of Pinnacle's arguments in turn and concludes that Pinnacle's motion must be denied.

## II. STANDARD OF DECISION

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "[t]he defendant has the burden of showing that the plaintiff has failed to state a claim for relief." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007) (citing Carver v. Bunch, 946 F.2d 451, 454-455 (6th Cir. 1991)). To survive a Rule 12(b)(6) motion, the plaintiff must allege sufficient facts to state a claim to relief above the speculative level, such that it is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The plausibility standard requires courts to accept

the alleged facts as true, even when their truth is doubtful, and to make all reasonable inferences in favor of the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Twombly, 550 U.S. at 555-556.

Evaluating a complaint's plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. Although a complaint that offers no more than "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" will not suffice, id. at 678, it need not contain "detailed factual allegations," Twombly, 550 U.S. at 555. Rather, a complaint needs only enough facts to suggest that discovery may reveal evidence of illegality, even if the likelihood of finding such evidence is remote. Id. at 556. Accordingly, a motion to dismiss "should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Directv, 487 F.3d at 476 (6th Cir. 2007).

### III. ANALYSIS

#### A. The Applicability of the ELCRA

The parties agree that, to maintain a claim under the ELCRA, a plaintiff must be an employee of the defendant. Compare Def. MTD at 13, with Pl. Resp. at 12 (Dkt. 9); see also Falls v. The Sporting News Publishing Co., 834 F.2d 611, 613 (6th Cir. 1987). However, the parties disagree as to whether Patterson was a prospective independent contractor—as opposed to a prospective employee—at the time of the alleged discrimination and retaliation. Pinnacle argues that the "one piece of evidence relevant to the classification question is the Sales Partner Agreement" because Patterson never began working for Pinnacle. Def. MTD at 8 n.3. Further, Pinnacle argues, the fact that paragraph 12(a) of the agreement labels Patterson as an independent

3

contractor proves that she was a prospective independent contractor when her offer was revoked. Id. at 6. This paragraph provides:

> (a) Independent Contractors. In all matters relating to this Agreement, Partner [Ms. Patterson] and Company shall act as independent contractors. Neither party will represent that it has any authority to assume or create any obligation, expressed or implied, on behalf of the other party, or to represent the other party as agent, employee, or in any other capacity.

Agreement at 2. In response, Patterson argues that paragraph 12(a) is not dispositive on the issue of whether an employment relationship existed. Pl. Resp. at 9-10. Rather, Patterson argues, other relevant considerations, including other provisions of the agreement, weigh towards classifying her as a prospective employee. Id. at 10.

As a threshold matter, the Court observes that it may properly consider the agreement in resolving the instant motion to dismiss. This is because, in ruling on a Rule 12(b)(6) motion, courts may consider documents that, although not attached to the pleadings, are "referred to in the complaint and central to the plaintiff's claim." See Greenberg v. Life Ins. Co. of Virginia, 177 F.3d 507, 514 (6th Cir. 1999) (internal citations omitted). Here, Patterson references the agreement, signed by Patterson on August 14, 2020, by alleging that she accepted the position as Sales Partner on August 14, 2020. Compl. ¶¶ 7-8. Further, the agreement's centrality to Patterson's ELCRA claims is clear, and neither party argues otherwise.

As another threshold matter, the Court rejects Pinnacle's argument that the Court cannot consider certain of Patterson's arguments regarding her classification as an employee. Pinnacle argues that Patterson raises new allegations in her response that the agreement misclassified her as an independent contractor and, because these allegations were not made in Patterson's complaint, the Court should not consider these allegations. Def. Reply at 2-3 (Dkt. 10). Pinnacle misconstrues Patterson's argument. In her complaint, Patterson clearly alleges that she was offered

4

"employment" by Pinnacle. Compl. at ¶ 16. In her response to the motion to dismiss, Patterson acknowledges that the agreement classifies her as an independent contractor but contends that, nevertheless, other relevant factors weigh towards classifying her as an employee. In other words, Patterson is not attempting to add a "new allegation" that the agreement misclassified her; rather, she is arguing that, despite the language of the agreement, other relevant factors dictate classifying her as an employee. This argument is perfectly in line with Patterson's already-existing allegations that she was offered employment by Pinnacle.

Having addressed these threshold matters, the Court now turns to the merits of the parties' dispute. Pinnacle is not entitled to dismissal of Patterson's complaint on the basis that the agreement labels Patterson as an independent contractor, for several reasons.

First, Pinnacle is incorrect that the Court may only consider the agreement in resolving the issue of Patterson's proper classification. It is true that, in determining whether a plaintiff is an employee or an independent contractor under ELCRA, courts in Michigan first look to any express agreement between the parties. Janette v. American Fidelity Group, Ltd., 298 F. App'x 467, 471 (6th Cir. 2008) (citing Weary v. Cochran, 377 F.3d 522, 525 (6th Cir. 2004)); Wheatley v. W. Central Mich. Employment & Training Consortium, Inc., 341 F. Supp. 3d 753, 764 (W.D. Mich. 2018) (applying Janette in the ELCRA context). However, while such agreements are "certainly relevant" to the parties' intentions and how they viewed the nature of their work, they are not dispositive. Weary, 377 F.3d at 525; Wheatley, 341 F. Supp. 3d at 764. After evaluating any express agreement, the courts must then apply the common law agency test. Janette, 298 F. App'x at 471 (citation omitted). The Supreme Court has described this test as follows:

> In determining whether a hired party is an employee under the general common law of agency, [the court] consider[s] the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the

> location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323-324 (1992); see also Shah v. Deaconess Hosp., 355 F.3d 496, 499-500 (6th Cir. 2004). Thus, to resolve the issue of Patterson's classification, the Court would need to assess and weigh "all of the incidents of the relationship," with "no one factor being decisive." Darden, 503 U.S. at 324.[1]

Second, even in failure-to-hire cases, courts consider proof beyond the parties' express agreement and labeling of their relationship in resolving whether a plaintiff should be classified as a prospective employee or independent contractor. One such instance is Fabian v. Hosp. of Cent. Connecticut, 172 F. Supp. 3d 509 (D. Conn. 2016), the one case that Pinnacle cites to support its argument that the parties' agreement is the only relevant evidence on the classification issue.[2] In that case, the court denied the defendant-hospital's motion seeking summary judgment, in relevant part, on the basis that the doctor whom the hospital failed to hire was an independent contractor. Fabian, 172 F. Supp. 3d at 515. The court held that "the mere fact that [the hospital] formally

---

[1] In this case, the parties agree that the common law agency test is used to determine a plaintiff's classification in ELCRA cases. Compare Pl. Resp. at 12, with Def. Reply at 4. The Court notes that some ELCRA cases utilize the "economic realities" test, rather than the common law agency factors, to analyze the question of a plaintiff's proper classification. See, e.g., Hacker v. City of Mt. Clemens, No. 267403, 2006 WL 2739342, at *1 (Mich. Ct. App. Sept. 26, 2006). The Court's conclusion would not change if it chose to utilize the economic realities test, as "[t]he substantive differences between the two tests are minimal." Shah, 355 F.3d at 499 (citation omitted).

[2] Although Fabian involved a claim under Title VII of the Civil Rights Act of 1964, not the ELCRA, the same common law agency test is used to determine whether a plaintiff is an employee covered under both Title VII and the ELCRA. See, e.g., Wheatley, 341 F. Supp. 3d at 764. Thus, Fabian and other Title VII cases can provide guidance on the employee classification issue raised in the present ELCRA case.

designates its doctors as 'independent contractors' does not make them so"; "[i]nstead, the question 'whether a worker is an employee—or whether he or she is merely an independent contractor—requires the application of the common law of agency." Id. (internal quotation marks and citation omitted).  In addition to considering the agreement executed by the plaintiff-doctor and the defendant-hospital, the Fabian court considered hospital policies and procedures to which doctors were subjected, as well as: (i) the hospital's right to control the plaintiff's work (which weighed towards independent contractor classification, given the plaintiff's high skill level); (ii) the location and tools of the of work (which weighed towards employee classification, given that both were supplied by the hospital); and (iii) the duration of the work (which weighed towards employee classification, given that the plaintiff "would not have been brought in to perform a specific task until completion—like a contractor hired to shingle a roof . . . ."). Id. at 517-518.

Third, and finally, it is axiomatic that an employer cannot escape liability under the ELCRA (and other statutes that similarly provide protections only to employees) by merely labeling someone as an "independent contractor."  See, e.g., Keller v. Miri Microsystems, LLC, 781 F.3d 799, 804 (6th Cir. 2015) (citing Rutherford Food Corp. v. McComb, 331 U.S. 722, 729 (1947)) (analyzing employee classification issue in a case brought under the Fair Labor Standards Act using substantially similar test as used to determine a plaintiff's classification under the ELCRA).  If employers could do so, there would be no need for courts to consider any factors beyond the parties' labeling of their relationship.  Thus, even if the agreement were the only piece of evidence relevant to the classification issue, Pinnacle still would not be entitled to dismissal of Patterson's complaint on the basis that one paragraph in the agreement (paragraph 12(a)) labels Patterson as an independent contractor.  Rather, the Court would consider how other portions of the agreement outside of paragraph 12(a) affect the common law agency analysis.

Pinnacle appears to concede this point in its reply, arguing that other portions of the agreement, in addition to paragraph 12(a), support classifying Patterson as an independent contractor. Def. Reply at 5-6. Pinnacle argues, for instance, that Patterson represented by signing the agreement that she "provide[d] relevant relationships and partnerships with corporations and key industry leaders" and had "contacts, relationships, customers, and clients in the technical services industry," thereby demonstrating specialized skills, which weigh towards independent contractor classification. Id. at 5.

Pinnacle did not raise any arguments regarding agreement provisions other than paragraph 12(a) in its motion to dismiss; rather, Pinnacle only did so for the first time in its reply. As a result, the Court need not consider such arguments in resolving the motion to dismiss. Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 553 (6th Cir. 2008). Even if the Court were to consider Pinnacle's arguments regarding other agreement provisions that weigh towards classifying Patterson as an independent contractor, the Court would also need to consider the portions of the agreement that weigh towards classifying Patterson as an employee. Patterson argues that the agreement indeed contains information that supports classifying her as an employee:

> The Agreement provided that the Agreement was not for a specified period of time, much like with an at-will employment relationship. Additionally, Defendant had discretion over how Plaintiff worked because Plaintiff was subject to a non-competition agreement which precluded her from working for any competitors during the term of the Agreement. The work Plaintiff would have performed for Defendant was part of Defendant's regular business as Defendant is a software company and Plaintiff would have sold Defendant's software.

Pl. Resp. at 10.

As the parties point out, some of the provisions of the agreement support classifying Patterson as a prospective employee, while others support classifying her as a prospective independent contractor. Ultimately, it is premature for the Court to decide the classification issue

8

based on just the agreement, as it is unclear at this point whether additional evidence relevant to the classification issue may exist. Rather than speculate, as Pinnacle does, as to whether there is any relevant evidence beyond the parties' agreement on the classification issue, the Court will permit discovery and further factual development to determine if Pinnacle's hypothesis will be borne out. This issue may be the proper subject of a future motion for summary judgment, but it is not ripe for resolution on the instant motion to dismiss.

For the above reasons, Pinnacle's motion to dismiss Patterson's complaint in its entirety is denied.

### B. Patterson's Retaliation Claim

Pinnacle also argues that Patterson's retaliation claim should be dismissed for failure to state a claim upon which relief may be granted. "[T]o establish a prima facie case of unlawful retaliation under the [ELCRA], a plaintiff must show (1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." El-Khalil v. Oakwood Healthcare, Inc., 934 N.W.2d 665, 670-671 (Mich. 2019) (citation omitted). Pinnacle contends that "[t]he facts alleged in the Complaint disprove elements (3) and (4)." Def. MTD at 10. Specifically, "[t]he protected activity Ms. Patterson alleges is complaining (through her attorney) that she felt Pinnacle 'had been discriminated against on the basis of her pregnancy and/or gender," which "took place on August 27, 2020" and "[t]he adverse action Ms. Patterson alleges is that Pinnacle rescinded her offer," which "allegedly took place on August 24, 2020." Id. Thus, Pinnacle concludes, Patterson "fails to allege an adverse action that took place after she engaged in protected activity." Id. Patterson

responds that she alleged that she was retaliated against either via the director's telephone call on August 24, 2020 or, alternatively, via the CEO's letter on August 31, 2020. Resp. at 11-12.

Federal Rule of Civil Procedure 8(d)(2) expressly allows for alternative pleading. In light of Rule 8(d)(2), a pleading does not become insufficient by reason of a party alleging alternative foundations for liability. See Rowe v. Cleveland Pneumatic Co., 690 F.2d 88, 92 (6th Cir. 1982). Patterson pleaded in her complaint that, on August 24, 2020, she was "notified" that Pinnacle's "CEO had concerns about her pregnancy and was rescinding the offer of employment" and, "on or about August 31, 2020, Defendant's CEO wrote Plaintiff a letter making it clear that Plaintiff's offer of employment with Defendant was rescinded." Compl. at ¶¶ 12, 16. As a result, even though Plaintiff alleges that the adverse action occurred on August 24, 2020, she also sufficiently alternatively alleges that the adverse action occurred on August 31, 2020, which is after Patterson allegedly engaged in protected activity on August 27, 2020. Whether August 31, 2020 is the date when Patterson's offer was revoked is not a question for the Court to resolve on the instant Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 678. Because a pleading is sufficient if any one of the plaintiff's alternative statements of a claim is sufficient, Fed. R. Civ. P. 8(d)(2), Patterson's retaliation claim survives dismissal.

### IV. CONCLUSION

For the foregoing reasons, the motion to dismiss (Dkt. 3) is denied.

SO ORDERED.

Dated: March 3, 2021  s/Mark A. Goldsmith
      Detroit, Michigan  MARK A. GOLDSMITH
                            United States District Judge